

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00120-CV

JODY WEIDERMAN APPELLANT

V.

THE CITY OF ARLINGTON, TEXAS; APPELLEES
AND JEFF WILLIAMS, MAYOR IN
HIS OFFICIAL CAPACITY

----------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 236-277052-15

----------

## OPINION

----------

In this accelerated appeal, appellant Jody Weiderman appeals from the trial court's order granting the plea to the jurisdiction filed by appellees the City of Arlington, Texas (the city), and Mayor Jeff Williams (the mayor), and dismissing Weiderman's declaratory-judgment action. Because Weiderman did not have

standing to bring the action, we affirm the trial court's dismissal order granting the plea.

## I. BACKGROUND

### A. FACTS LEADING TO THE ORDINANCE

The city is a home-rule municipality. *See* Tex. Const. art. XI, § 5; Tex. Loc. Gov't Code Ann. § 9.001 (West 2008); Arlington, Tex., Charter art. III. The city's council passed an ordinance implementing a photographic-traffic-signal-enforcement system (red-light cameras), as allowed by Texas state law. *See* Tex. Transp. Code Ann. § 707.002 (West 2011); Arlington, Tex., Rev. Ordinances ch. Traffic, art. IX (2015). The city contracted with American Traffic Solutions, Inc. (ATS) to provide red-light-camera services in the city. The contract permitted the city to terminate the contract "for any reason with or without cause after ninety (90) days['] notice at any time after June 10, 2012."

On January 20, 2015, the city's secretary, Mary Supino, received a written "Petition to Ban Red Light Cameras," petitioning the city, the mayor, and the city's council "for an election to amend the Charter of the City of Arlington" to ban the use of red-light cameras. *See* Tex. Loc. Gov't Code Ann. § 9.004(a) (West 2008) (granting qualified voters of a home-rule municipality the right to petition the governing body to amend its charter); Arlington, Tex., Charter art. VII, § 7 (permitting written petitions to be presented to the city's council). Because the city had contracted with the Tarrant County Elections Administrator (the county administrator) to provide election services for the city, Supino delivered the

2

petition to the county administrator the next day "to review and verify the signatures on the petition." *See* Tex. Elec. Code Ann. § 31.092 (West Supp. 2014), §§ 277.002, 277.003 (West 2010). Of the 11,146 signatures on the petition, the county administrator verified 9,382 signatures as valid and 1,764 signatures as invalid. As required by the city's charter, the resulting ordinance ordering an election to amend the city's charter to ban red-light cameras was read at two council meetings, and the council voted on and passed the ordinance at the second meeting on February 24, 2015. Arlington, Tex., Charter art. VII, §§ 8, 10; *see also id.* art. III, § 4.B (recognizing power of qualified voters to petition for amendment to home-rule city's charter under current election code section 9.004).

## B. ENSUING LITIGATION

The next day—February 25, 2015—Weiderman, a city resident, filed a declaratory-judgment petition against the city and the mayor,[1] alleging that the charter did not provide for a citizen-initiated referendum right, contending that the legislature conferred authority over red-light cameras only on the city's council, and requesting a temporary restraining order or injunction preventing the city and the mayor from taking any other action that would allow a vote on the red-light-

---

[1]At the time Weiderman filed his petition, the elected mayor of the city was Robert Cluck. However, Williams was elected to serve as mayor of the city on May 9, 2015, and was sworn in as the city's mayor on May 26, 2015; thus, he is automatically substituted as a party in his official capacity. *See* Tex. R. App. P. 7.2(a).

3

camera issue. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001, 37.003 (West 2015); Tex. R. Civ. P. 680. Weiderman had filed a voter-registration application on February 18, 2015, but was not certified as a registered voter by the voter registrar until February 27, 2015, two days after he filed his petition. *See* Tex. Elec. Code Ann. § 13.002(a) (West Supp. 2014), §§ 13.071–.072 (West 2010). Weiderman later testified that he believed the red-light cameras should "stay in the City of Arlington" for "safety reasons."

The city and the mayor immediately filed a plea to the jurisdiction, arguing that the trial court did not have subject-matter jurisdiction because courts may not prohibit an election and because the issue was not ripe for review. *See* Tex. R. Civ. P. 85. That same day, the trial court held a hearing on Weiderman's request for a temporary restraining order, and the city represented that the mayor already had signed the ordinance. Therefore, Weiderman recognized that his request for a temporary restraining order was moot but continued to request that the trial court enjoin the election itself.

On February 26, 2015, Citizens for a Better Arlington (CFBA)—a political-action committee—and Faith Bussey—a signatory of the petition, a city resident, and the sole member of CFBA—filed a plea in intervention and argued that Weiderman's claims should be denied for substantially the same reasons relied on by the city and the mayor in their plea to the jurisdiction. *See* Tex. Elec. Code Ann. § 233.004 (West 2010); Tex. R. Civ. P. 60. CFBA and Bussey moved for dismissal of Weiderman's claims because their actions in collecting signatures to

4

petition the city's council involved the exercise of their constitutional right to petition, requested sanctions against Weiderman for filing a groundless pleading, and pleaded for the recovery of their attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 9.012, 10.002 (West 2002), §§ 27.001–.011 (West 2015); Tex. R. Civ. P. 13.

On March 3, 2015, the trial court held an evidentiary hearing on the plea to the jurisdiction and signed an order granting the plea and dismissing Weiderman's petition that same day.[2] On March 20, 2015, Weiderman filed a mandamus petition and a motion for emergency relief in this court, seeking a writ of mandamus regarding the trial court's jurisdictional ruling and arguing that appeal was an inadequate remedy because the election was "only two months away." *See* Tex. R. App. P. 52.1, 52.10. We denied the petition and the motion for emergency relief on March 25, 2015; seven days later on April 1, 2015, the Texas Supreme Court likewise denied Weiderman's mandamus petition filed in that court. *See In re Weiderman*, No. 02-15-00101-CV, 2015 WL 1499070, at *1 (Tex. App.—Fort Worth Mar. 25, 2015, orig. proceeding [mand. denied]).

On April 7, 2015, Weiderman filed a motion for extension of time to file a notice of appeal from the trial court's March 3, 2015 order granting the plea to the jurisdiction and dismissing his claims, which Weiderman asserted was due on

---

[2]The city, the mayor, CFBA, and Bussey, participated in the hearing and uniformly argued that the trial court had no jurisdiction over Weiderman's declaratory-judgment action.

April 2, 2015.[3] *See* Tex. R. App. P. 10.5(b), 26.1, 26.3. He requested the extension because he had "inadvertently missed the deadline." The city and the mayor responded to the motion, arguing that it should be denied because Weiderman failed to reasonably explain the need for the extension. *See* Tex. R. App. P. 10.5(b). We granted the motion and ordered the notice to be filed in the trial court under the date of April 7, 2015. *See* Tex. R. App. P. 26.3. The city and the mayor did not file a motion for rehearing or a motion for en banc reconsideration of this determination. *See* Tex. R. App. P. 49.1, 49.7.

The proposition to amend the city's charter to ban red-light cameras was placed on the ballot for the city's May 9, 2015 general election and was approved by a majority of voters: 15,885 voted in favor of the proposition and 10,809 voted

---

[3]By asserting that the due date for his notice of appeal was thirty days after the trial court's order, Weiderman implicitly argued that the order disposed of all issues and parties and was, therefore, a final judgment. *See* Tex. R. App. P. 26.1(b), 28.1(a). However, CFBA and Bussey's claims for sanctions and attorney's fees prevented the trial court's order from being construed as a final judgment; thus, the appeal is accelerated, and Weiderman's notice of appeal was due March 23, 2015. *See* Act of May 29, 2015, 84th Leg., R.S., ch. 1236, § 3.001, sec. 51.014(a)(8), 2015 Tex. Sess. Law Serv. 4095, 4097 (West) (to be codified as nonsubstantive amendment to Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8)); *Crites v. Collins*, 284 S.W.3d 839, 840–41 (Tex. 2009); *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 871–72 (Tex. App.—Dallas 2014, no pet.); *see also Rauhauser v. McGibney*, No. 02-14-00215-CV, 2014 WL 6996819, at *3 (Tex. App.—Fort Worth Dec. 11, 2014, no pet.) (holding defendant's motion to dismiss that requested fees and sanctions under section 27.003 survived plaintiff's nonsuit). Weiderman timely filed his April 7, 2015 motion for extension, however, because he filed it on the fifteenth day after the twenty-day, accelerated deadline. *See* Tex. R. App. P. 26.3.

against it.[4]  *See* Arlington, Tex., Charter art. VII, § 14.  On May 13, 2015, the Arlington Police Department notified ATS that the city was terminating its contract under the 90-day, at-will termination clause.  After the election results were canvassed and adopted by the city's council, the city amended its charter on May 19, 2015, to ban the use of red-light cameras.  *See* Arlington, Tex., Charter art. X, § 12 (2015); *see also* Tex. Elec. Code Ann. §§ 67.004–.005 (West 2010) (reciting canvassing requirements).  In a sole issue on appeal, Weiderman argues that the trial court erred by granting the plea to the jurisdiction.

## II.  DISCUSSION

### A.  APPELLATE JURISDICTION

In their brief, the city and the mayor argue that Weiderman's appeal must be dismissed because his "claimed excuse" for filing his notice of appeal late was not a reasonable explanation justifying an extension, rendering his notice of appeal untimely filed.  Although the city and the mayor "acknowledge[] that the Court previously issued a per curiam Order on this matter," at no point do they explicitly recognize that we granted Weiderman's motion for extension and thereby implicitly concluded that he had presented a reasonable explanation.  Indeed, they do not ask us to reconsider the extension but merely assert, as if for the first time, that Weiderman did not establish a reasonable explanation.  In any

---

[4]Because the measure was placed on the ballot for a general election, the city incurred no additional costs other than paying the county administrator $2,662.53 to verify the signatures on the petition.

7

event, our determination of the reasonableness of Weiderman's explanation is a discretionary one, and the city and the mayor have not raised any argument not previously raised in their response to Weiderman's extension motion. *See Dimotsis v. State Farm Lloyds*, 966 S.W.2d 657, 657 (Tex. App.—San Antonio 1998, order) (stating reasonable explanation is any plausible statement showing that failure to file notice of appeal timely was not deliberate and includes attorney negligence), *disp. on merits*, 5 S.W.3d 808 (Tex. App.—San Antonio 1999, no pet.). *See generally* Alessandra Ziek Beavers, *O'Connor's Texas Civil Appeals* 112 (2014) (discussing sufficient reasonable explanation under rule 10.5(b)). We decline to revisit our prior ruling, especially in the absence of a motion for rehearing or any new arguments in support of their position.

## B. TRIAL COURT JURISDICTION

### 1. Standard and Scope of Review

A plea to the jurisdiction is a dilatory plea that is unconcerned with the merits of the asserted claims. *Mission Consol. Ind. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Such a plea challenges the trial court's power to adjudicate a case, and the burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149–50 (Tex. 2012). Whether a trial court has subject-matter jurisdiction is a legal question that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). In doing so, we review the parties' pleadings, any evidence submitted to negate the existence

8

of jurisdiction, and any evidence necessary to resolve the jurisdictional issue. *Heckman*, 369 S.W.3d at 150. In short, we are to answer the limited question of whether the plaintiff affirmatively demonstrated the trial court's jurisdiction; we are precluded from addressing the merits of Weiderman's claims unless the jurisdictional issue implicates the claims' merits. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex. 2000); *Thornton v. Ne. Harris Cty. MUD 1*, 447 S.W.3d 23, 39–40 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

## 2. Application

The city and the mayor argue that Weiderman "does not have any special injury that would give him standing to challenge the holding of the election." Standing is a component of a trial court's subject-matter jurisdiction and ensures that there is a real controversy between the parties that will be determined by the judicial declaration sought. *Patel v. Tex. Dep't of Licensing & Regulation*, 58 Tex. Sup. Ct. J. 1298, 2015 WL 3982687, at *5 (June 26, 2015); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). In his pleadings and at the hearing in the trial court, Weiderman relied on his status as a taxpayer and registered voter to confer the required standing.

"No Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts." *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001). Therefore, unless a statute confers standing on him or he seeks to enjoin the prospective expenditure of public funds, Weiderman must allege some injury distinct from that sustained

9

by the public at large.[5]  *See id.*; *Bland*, 34 S.W.3d at 555–56; *cf. Blum v. Lanier*, 997 S.W.2d 259, 261–62, 264 (Tex. 1999) (holding qualified voters who signed petition to initiate election to amend home-rule city's charter had justiciable interest in the valid execution of charter-amendment election and, thus, had interest distinct from general public to confer standing to seek injunctive relief). Here, there is no evidence that Weiderman suffered an injury distinct from (1) any other city citizen who disagreed with the red-light-camera petition or resulting proposition "for safety reasons" or (2) any of the 10,809 certified voters who voted against the proposition at the May 9, 2015 election.  Indeed, Weiderman admitted at the hearing on the city and the mayor's plea to the jurisdiction that he was no different than any other citizen who believed the red-light-camera program was "good."[6]  Failing such a distinct-injury showing, Weiderman does not have standing.  We conclude that Weiderman's status and proposed rationale for standing do not give him an interest sufficiently unique or peculiar to him to satisfy standing requirements.  *See Brown*, 53 S.W.3d at 305–06; *City of San Antonio v. Strumburg*, 7 S.W. 754, 755 (Tex. 1888).

---

[5]We recognize that a party's status as a taxpayer may confer standing in the absence of a particularized injury under narrow circumstances.  *See Andrade v. Venable*, 372 S.W.3d 134, 137–39 (Tex. 2012).  Although Weiderman alleged that he was a taxpayer, he failed to raise any argument either in the trial court or this court showing that he met the requirements of taxpayer standing. *See Heckman*, 369 S.W.3d at 149–50 (holding burden to affirmatively demonstrate jurisdiction is on plaintiff).

[6]On appeal, Weiderman does not address the city and the mayor's lack-of-standing arguments.

10

*See generally* William V. Dorsaneo III, *The Enigma of Standing Doctrine in Texas Courts*, 28 Rev. Litig. 35, 55–57 (2008) (discussing standing in the context of cases involving the adjudication of public interests).  Accordingly, the trial court did not have subject-matter jurisdiction over Weiderman's claims.

### III.  CONCLUSION

Because Weiderman did not have standing, the trial court correctly granted the city and the mayor's plea to the jurisdiction.  We overrule Weiderman's sole issue and affirm the trial court's order.  *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DELIVERED:  September 17, 2015

11